1  OLIVIA GARCIA
   ROBERT J. BUFFIN
2  CHRISTY J. KWON
   CECILY A. VIX
3  National Labor Relations Board, Region 20
4  901 Market Street, Suite 400
   San Francisco, CA 94103
5  Telephone: (415) 356-5154/ (415)356-5179

6  Attorneys for Petitioner

7                UNITED STATES DISTRICT COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

                                                    C 07 3808
9
   JOSEPH P. NORELLI, Regional Director of Region 20 )
10 of the National Labor Relations Board, for and on  )
   behalf of the NATIONAL LABOR RELATIONS             )  Civil No.
11 BOARD,                                             )
                                                      )
12                         Petitioner,                )  MEMORANDUM OF POINTS AND
13          v.                                        )  AUTHORITIES IN SUPPORT OF
                                                      )  PETITION FOR INJUNCTION UNDER
14 SERVICE EMPLOYEES INTERNATIONAL UNION,)            SECTION 10(l) OF THE NATIONAL
   LOCAL 87                                           )  LABOR RELATIONS ACT, AS
15                                                    )  AMENDED, [29 U.S.C.
16                         Respondent.                )  SECTION 160(l)]
                                                      )
17                                                    )
                                                      )
18                                                    )

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I.  | Preliminary Statement | 1 |
| II. | The Statutory Scheme Pursuant to Which Injunctive Relief is Sought | 2 |
| III. | The Evidence | 4 |
| IV. | Injunctive Relief is Just and Proper | 7 |
|     | A. *The Likelihood of Success On The Merits* | 7 |
|     | B. *"Irreparable Harm" Presumed* | 14 |
|     | C. *"Balance Of Hardships"* | 15 |
|     | D. *Public Interest* | 15 |
| V. | Conclusion | 16 |

Table of Contents
Table of Cases

i

# TABLE OF CASES

Pages

1. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987)..................15

2. *Building Service Employees Local 87 (Liberty House/Rhodes)*, 223 NLRB 30, 33 (1976) ..............11

3. *Carpenters, Local 1260 (Seltzer Construction Co.)*, 210 NLRB 628, 630, and cases there cited, enf'd., 513 F.2d 637 (8th Cir. 1975)..................11

4. *Cornell University*, 183 NLRB 329 (1970) ..................4

5. *Crown Cafeteria v. NLRB*, 327 F.2d 351 (9th Cir. 1964)..................13

6. *Department & Specialty Store Employees Local 1265 v. Brown*, 284 F.2d 619, 626 (9th Cir. 1960), cert. denied, 366 U.S. 934 (1961)..................9

7. *Fanelli Ford Sales*, 133 NLRB 1468, 1469 (1961)..................10

8. *General Service Employees Union v. N.L.R.B.*, 578 F.2d 361, 374 (D.C. Cir. 1978)..................11

9. *Genuardi Super Market*, 252 NLRB 880 (1980)..................10

10. *Graphic Communications Local 1-M (Heinrich Envelope)*, 305 NLRB 603, 605 (1991)..................12

11. *Hotel & Restaurant Employees Local 274 (Stadium Hotel Partners)*, 314 NLRB 982, 986 (1994)..................12

12. *Hotel & Restaurant Employees Local 681 (Crown Cafeteria II)*, 135 NLRB 1183, 1185 *1962)..................13

13. *IBEW, Local 953 (Erickson Electric Co.)*, 154 NLRB 1301, 1305 (1965)..................11

14. *Local 88, Teamsters (West Coast Cycle Supply Co.)*, 208 NLRB 679, 680 (1974)..................11

15. *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 455 (9th Cir. 1994 (en banc)..................1,2,3,14,16

16. *Minneapolis Building & Construction Trades (Krasen Plumbing & Heating)*, 229 NLRB 98 (1977)..................10

17. *NLRB v. Drivers Local 639 (Curtis Bros.)*, 362 U.S. 274, 291 (1960)..................9

18. *N.L.R.B. v. International Brotherhood of Electrical Workers, Local 265*, 604 F.2d 1091, 1097 (8th Cir. 1979)..................11

19. *N.L.R.B. v. Knitgood Workers Union Local 155*, 403 F.2d 388, 390-391 (2d Cir. 1968)..............11

20. *NLRB v. Operating Engineers, Local 542*, 331 F.2d 99, 104 (3rd Cir. 1964)........................................9

21. *NLRB v. Suffolk County District Council Carpenters*, 387 F.2d 170, 173 (2d Cir. 1967) ................. 10

22. *NLRB v. Teamsters Local 239 (Stan-Jay Auto Parts)*, 289 F.2d 41, 45 (2d Cir. 1961)......................9

23. *Overstreet v. United Brotherhood of Carpenters and Joiners of America, Local 1506*,
    409 F.3d 1199 (9th Cir. 2005) .......................................................................1,2,3,16

24. *Plumbers Local 32 (Robert E. Bayley Construction)*, 315 NLRB 786, 790 (1994) ......................... 13

25. *Retail Clerks Local 137 v. Food Employers Council*, 351 F.2d 525 (9th Cir. 1965) ......................1,3,7

26. *Retail Clerks International Association No. 899 (State-Mart, Inc.)*,
    166 NLRB 818, 822, n. 6 enf'd 404 F.2d 855 (9th Cir. 1968) ................................................ 11

27. *San Francisco Culinary Workers (McDonald's System of California)*,
    203 NLRB 719, 725 (1973), enf'd. as modified, 501 F.2d 794 (D.C. Cir. 1974).............................. 11

28. *San Francisco-Oakland Newspaper Guild v. Kennedy*,
    412 F.2d 541 at 546 (9th Cir. 1969).................................................................................3,7

29. *Scott v. Stephen Dunn & Associates*, 241 F.3d 652, at 667-668, 669 (9th Cir. 2001) ........................ 15

30. *Siemon v. Mailing Service*, 122 NLRB 81 (1958) ........................................................................4

31. *United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992)..............................................3

32. *Waterway Terminals Co.*, 193 NLRB 477, 486-487 (1971), enfd. 473 F.2d 15 (9th Cir. 1973)........ 10

I. **Preliminary Statement**

This proceeding is before the Court on a petition filed by the Regional Director of Region 20 of the National Labor Relations Board pursuant to Section 10(l) of the National Labor Relations Act [29 U.S.C., Section 160(l)]. Petitioner is seeking a preliminary injunction restraining Service Employees International Union, Local 87, herein called Respondent,[1] from engaging in unfair labor practices within the meaning of Section 8(b)(7)(C) of the National Labor Relations Act, herein the Act, pending final disposition of the matters here involved now pending before the Board on a charge filed by Golden Gate University, herein referred to as Golden Gate University.

Petitioner submits that the evidence contained in the affidavits and exhibits[2] filed in support of the petition establishes that injunctive relief is just and proper.[3]

---

[1] At all times material herein, Respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of their employee-members. Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act [29 U.S.C., Section 152(5), 158(b) and 160(l)]. In addition, as will appear hereafter, the alleged unfair labor practices occurred within this judicial district. Thus, this Court has jurisdiction in the instant matter. See Section 10(l) of the Act.

[2] References herein are to the page numbers of the typewritten copies of the affidavits and exhibits filed in support of the petition.

[3] Under Section 10(l) of the Act, Petitioner is required to petition the Court for a preliminary injunction against a continuation of the unfair labor practice. *Retail Clerks Local 137 v. Food Employers Council*, 351 F.2d 525 (9th Cir. 1965). Injunctions are to be issued under Section 10(l), of the Act provided petitioner meets the "just and proper" standard relied on by the court in *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 455 (9th Cir. 1994 (en banc), a case involving injunctive relief under Section 10(j) of the Act. [29 U.S.C. Sec. 160(j) and affirmed by the court in Section 10(l) proceedings in *Overstreet v. United Brotherhood of Carpenters and Joiners of America, Local 1506*, 409 F.3d 1199 (9th Cir. 2005).

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

1

## II. The Statutory Scheme Pursuant to Which Injunctive Relief is Sought

Section 10(l) of the Act,[4] authorizes United States district courts to grant preliminary injunctions pending the Board's resolution of unfair labor practice proceedings. This provision reflects Congressional recognition that, because the Board's administrative proceedings often are protracted, in many instances, absent interim relief, a respondent could accomplish its unlawful objective before being placed under any legal restraint.[5]

Section 10(l) directs district courts to grant relief that is "just and proper." In the Ninth Circuit, district courts determine whether the relief is "just and proper" under traditional equitable criteria.[6] As stated in *Miller* and *Overstreet*, in applying the "just and proper" standards, district courts exercise discretion regarding the issuance of injunctions by considering a set of four equitable factors: (1) the movant's likelihood of success on the merits; (2) the possibility of irreparable injury to the moving party;

---

[4]  Section 10(l) (29 U.S.C. Section 160(l)) provides, in part,

> Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph 4(A), (B), or (C) of section 8(b) {section 158(b) of this title} or section 8(b)(7) {section 158(b)(7) of this title}, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law."

[5]  See *Miller v. California Pacific Medical Center*, 19 F.3d at 455, quoting S. Rep. No. 105, 80th Cong., 1st Sess. at pp. 8, 27 (1947).

[6]  See *Miller, supra* at 459-60 and *Overstreet v. United Brotherhood of Carpenters and Joiners of America Local Union No. 1506*, 409 F.3d at 1119.

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

2

(3) the extent to which the balance of hardships favors each party; and (4) whether the public interest will be advanced by granting the preliminary relief. These factors are evaluated on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases, and vice versa. *Overstreet,* at 1206-1207. Under the sliding scale, "[i]f the respondent concedes the substance of the unfair labor practice charge, or if the Board demonstrates that it is likely to prevail on the merits, [the Court will] presume irreparable injury."[7] This is because "the passage of the statute is itself an implied finding by Congress that violations will harm the public[; t]herefore further inquiry into irreparable injury is unnecessary."[8] The Court will consider the possibility of irreparable injury only if the charge is disputed and the Board has only a fair chance of success on the merits.[9]

In cases such as this, it is only necessary that Petitioner establish a "likelihood of violation; and, to this end, the introduction of evidence in minute detail is neither contemplated by the Act nor necessary in fact." See *Retail Clerks Local 137*, 351 F.2d at 525. Furthermore, the District Court is not called upon to resolve issues of credibility; rather its function with regard to issues of credibility is limited to a determination of whether such issues could ultimately be resolved by the Board in favor of Petitioner, i.e., the Board's General Counsel, and the Court need not find a probability that the issues will be so resolved by the Board, but merely that there is sufficient evidence from which the Board could find a violation of the law. *San Francisco-Oakland Newspaper Guild v. Kennedy*, 412 F.2d 541 at 546 (9th Cir. 1969).

---

[7]  *Miller*, supra at 460.

[8]  *Id.* at 359, quoting *United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992).

[9]  *Ibid.*

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

3

The evidence, discussed below, establishes that each of the equitable factors supports the conclusion that the issuance of the injunction in this case is just and proper.

III. **The Evidence**

At all material times, Golden Gate University, a non-profit corporation with an office and place of business in San Francisco, California, has been engaged in the operation of a private nonprofit university. (Aff. 10). During the twelve month period ending December 31, 2006, Golden Gate University, in the course and conduct of its business, derived gross revenues, excluding contributions which, because of limitations by the grantor, are not available for operating expenses, in excess of $1,000,000. (Aff. 10).[10]

Golden Gate University custodial services were provided by contractor, Able Building Maintenance, for several years. (Aff. 12). Able Building Maintenance employees working at Golden Gate University were represented by Respondent. (Aff. 27). Able Building Maintenance and Respondent were parties to a collective-bargaining agreement. (Aff. 28). Golden Gate University's contract with Able Building Maintenance was set to expire on June 30, 2007. (Aff. 12). By letter dated May 25, 2007, Golden Gate University's Director of Business Services and Facilities, Mike Koperski, notified Able Building Maintenance of its intent not to renew the contract. (Aff. 1, 5). Upon expiration of the contract, Golden Gate University did not renew. (Aff. 12). Rather, Golden Gate University directly hired ten new employees to do custodial and facility maintenance work. (Aff. 12).

Office and Professional Employees International Union Local 3, herein OPEIU Local 3, represents all regular employees employed by Golden Gate University in the City and County of San

---

[10] Golden Gate University is an employer engaged in commerce and in operations affecting commerce within the meaning of sections 2(2), (6) and (7), 8(b)(7)(C) and 10(l) of the Act. *Cornell University*, 183 NLRB 329 (1970); *Siemon v. Mailing Service*, 122 NLRB 81 (1958).

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

4

Francisco, excluding part-time hourly employees, professional employees, confidential employees, managerial employees, faculty, guards and supervisors as defined in the National Labor Relations Act. (Aff. 14-15). A collective-bargaining agreement between Golden Gate University and OPEIU Local 3 was to expire September 30, 2006, but the parties agreed to its indefinite extension. (Aff. 26). Prior to the expiration of the contract with Able Building Maintenance, Golden Gate University's Director of Human resources, Terri Shultis, emailed OPEIU Local 3 representative Lori Liederman to inform her that it was Golden Gate University's position that the new custodial positions would be included in the existing OPEIU unit. (Aff. 15). Lori Liederman did not object. (Aff. 15).

On May 29, 2007, Respondent began picketing in front of Golden Gate University's main entrance at 536 Mission Street in San Francisco, California. (Aff. 1, 10). The picketing continued about four times a week through July 23, 2007. (Aff. 27). From May 29, 2007 to the present the pickets at the main entrance have carried signs with the following legends:

GOLDEN GATE UNIVERSITY UNFAIR

JUSTICE FOR JANITORS

GGU STUDENTS DEMANDING JUSTICE FOR JANITORS

SUPPORT THE JANITORS AT GOLDEN GATE UNIVERSITY

JANITORS HAVE FAMILIES TOO

(Aff. 9, 17, 25).

On average, there have been about 25 people per day picketing (Aff. 1). Some of the participants carry picket signs, while others use bull horns to shout slogans in English and Spanish or pass out flyers. (Aff. 1, 11). The slogans chanted include, "GGU Unfair." (Aff. 11). A flyer handed out on May 29, 2007 by the picketers reads,

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

> Golden Gate University Unfair! Golden Gate University prides itself on its financial strength and investment in their students, staff and faculty. Well, janitors are staff, [sic] too and contribute to this learning community so we are demanding the same level of respect and consideration! Janitors have families just like the faculty and students on this campus! Support the janitors at Golden Gate University! Call or fax university president, Phillip Friedman and ask that no janitors be fired or laid off until the university sits down with Local 87, the janitor's union to resolve pending issues!

(Aff. 18).

Another flyer passed out by picketers includes statements such as,

> GGU will not increase the number of Union represented employees on campus if the janitors are not union.
>
> Local 87 realizes that ending vendor agreements is normal business practice. Fighting to keep workers unionized and ensuring that workers get the best and most appropriate representation possible is regular union practice.
>
> Office & Professional Employees International Union, Local 3 is not representing the janitors at GGU. Local 3 has not assumed representation for these workers. Although Local 3 is a sister union of SEIU Local 87 they represent completely different industries and in San Francisco SEIU Local 87 represents janitors.
>
> SEIU Local 87 wants to work with GGU to ensure the janitors get proper representation, the students' needs are met and that the valuable services being provided remain affordable for GGU which is why we have asked GGU to sit down and discuss the issues with us. GGU has refused to even negotiate.

(Aff. 19).

The picketers have not prevented employees from crossing the picket line and working and all deliveries have been made. (Aff. 14). However, students of Golden Gate University are studying, some for the bar exam, and the picketing and the noise is disruptive. (Aff. 14). Students, faculty, guest

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

6

speakers, and other employees have complained that it is uncomfortable going in and out of the building. (Aff. 14).

Since May 29, 2007, Respondent has not filed a petition for recognition for any employees at Golden Gate University nor have they made a demand for voluntary recognition. (Aff. 14).

IV. **Injunctive Relief is Just and Proper**

The four equitable factors in the just and proper test will be discussed below.

    A. *The Likelihood of Success On The Merits*

In this case, Petitioner's pleadings clearly demonstrate that there is a probability that Petitioner will prevail in the underlying Board Section 8(b)(7)(C) unfair labor practice case.[11] Section 8(b)(7)(C) of the Act [29 U.S.C. Sec. 158(b)(7)(C)] specifically prohibits labor organizations from engaging in recognitional picketing when no representation petition has been filed with the Board within 30 days from the onset of the picketing.[12]

---

[11] In cases such as this, it is only necessary that Petitioner establish a "likelihood of violation; and, to this end, the introduction of evidence in minute detail is neither contemplated by the Act nor necessary in fact." See *Retail Clerks Local 137*, 351 F.2d at 525. Furthermore, the District Court is not called upon to resolve issues of credibility; rather its function with regard to issues of credibility is limited to a determination of whether such issues could ultimately be resolved by the Board in favor of Petitioner, i.e., the Board's General Counsel, and the Court need not find a probability that the issues will be so resolved by the Board, but merely that there is sufficient evidence from which the Board could find a violation of the law. *San Francisco-Oakland Newspaper Guild v. Kennedy*, 412 F.2d at 546.

[12] **b) [Unfair labor practices by labor organization]** It shall be an unfair labor practice for a labor organization or its agents—

{Section 8(b)(1)-(6) are not relevant to this case and are omitted}
(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

7

Section 8(b)(7)(C) was enacted to ensure this vital right of self-determination by employees as regards union representation, against abridgment by labor organizations bent upon obtaining bargaining recognition without regard to the desires of the employees involved. Recognizing that a union may, through picketing and threatening to picket, exert sufficient pressure to compel acceptance by the employer of a union which his employees have not themselves selected as their representative, Congress, in Section 8(b)(7)(C), barred a union, other than a currently certified union, from picketing or threatening to picket for a period of more than 30 days for an object of recognition, unless a representation petition is filed before the expiration of that period. If no such petition is filed, continuation of the picketing or threats to picket beyond this reasonable period of 30 days is an unfair labor practice; the filing of a timely representation petition, however, stays the limitation and the

---

organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective-bargaining representative, unless such labor organization is currently certified as the representative of such employees:
{Section 8(b)(7)(A), (B) and (D) are not relevant to this case and are omitted.}
(C) where such picketing has been conducted without a petition under section 9(c) [Section 159(c) of this title] being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing:
Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c)(1) [section 159(c)(1) of this title] or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof:
Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.
Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this section 8(b) [this subsection].

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

8

picketing and threats to picket may continue pending processing of the petition. However, in order to avoid undue prolongation of the picketing or threatened picketing, the first proviso to subsection (C) expedites the election procedures, specifying that, where a timely petition has been filed, "the Board shall forthwith, without regard to the provisions of Section 9(c)(1) [of the Act] or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof." Moreover, the second proviso to subsection (C) affords an immunity to so-called "publicity" picketing "for the purpose of truthfully advising the public . . . that an employer does not employ members of, or have a contract with, a labor organization;" but the immunity granted by the second proviso is lost if "an effect of such picketing is to induce" a stoppage of deliveries or refusal by any employees of any other employer to pick up or transport goods or to perform services.[13]

In sum, Section 8(b)(7)(C) represents a plan carefully designed by Congress to further the orderly resolution of disputes over the representation of employees requiring that such questions be settled through Board procedures rather than as a result of coercive picketing, or threats to picket.[14] As stated by the Court of Appeals for the Ninth Circuit, "[T]here is no doubt that the purpose of this legislation was to place a rather severe and drastic limitation on picketing, other than informational, and to provide for a representation election without delay." *Department & Specialty Store Employees Local 1265 v. Brown*, 284 F.2d 619, 626 (9th Cir. 1960), cert. denied, 366 U.S. 934 (1961).

---

[13]   See *NLRB v. Operating Engineers, Local 542*, 331 F.2d 99, 104 (3rd Cir. 1964); *NLRB v. Teamsters Local 239 (Stan-Jay Auto Parts)*, 289 F.2d 41, 45 (2d Cir. 1961).

[14]   See *NLRB v. Drivers Local 639 (Curtis Bros.)*, 362 U.S. 274, 291 (1960).

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

9

In this case, Respondent has picketed Golden Gate University for nearly two months; no petition was filed with the Board within 30 days of the onset of the picketing; Respondent's picketing activity was initiated in order to force Golden Gate University to recognize Respondent as the collective-bargaining representative of its employees and/or to force Golden Gate University to sign a collective-bargaining agreement with Respondent.

The Congressional restrictions imposed upon picketing by an uncertified union in Section 8(b)(7)(C) apply only where "an object thereof" is to force an employer to recognize and bargain with a union, or to force employees to accept such union as their collective bargaining representative.[15]

The Board and the courts have held that Section 8(b)(7)(C) requires an inquiry into the underlying or actual motivation for the picketing to determine whether an object thereof is to compel an employer to recognize and bargain with a union or to force the employees of the picketed employer to accept such union as their collective bargaining representative. *Fanelli Ford Sales*, 133 NLRB 1468, 1469 (1961); *Waterway Terminals Co.*, 193 NLRB 477, 486-487 (1971), enfd. 473 F.2d 15 (9th Cir. 1973). Thus, in evaluating the objective of a union's picketing, the Board looks not only at the picket signs but also at other indicia of intent. *Genuardi Super Market*, 252 NLRB 880 (1980).

Although Respondent claims that it has only been picketing to inform the public that the janitors at Golden Gate University are not union and that there is no union contract at this time, the evidence amply demonstrates that recognition has been at least an object of the picketing, which is all that is required for the finding of a violation. In determining whether a union has a recognitional or

---

[15] The statute uses the phrase "an object" so that if one of the union's objectives in picketing is to attain such representative status, it is immaterial that the picketing also has additional, legitimate purposes. *NLRB v. Suffolk County District Council Carpenters*, 387 F.2d 170, 173 (2d Cir. 1967); *Minneapolis Building & Construction Trades (Krasen Plumbing & Heating)*, 229 NLRB 98 (1977).

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

organizational object -- rather than, or in addition to, its claimed sole, legitimate object -- the Board and courts are not required to accept the self-serving explanations of the union concerning the object of its picketing. See *N.L.R.B. v. International Brotherhood of Electrical Workers, Local 265*, 604 F.2d 1091, 1097 (8th Cir. 1979); *General Service Employees Union v. N.L.R.B.*, 578 F.2d 361, 374 (D.C. Cir. 1978); *Carpenters, Local 1260 (Seltzer Construction Co.)*, 210 NLRB 628, 630, and cases there cited, enf'd., 513 F.2d 637 (8th Cir. 1975). Rather, in cases where an unlawful objective in picketing is not established by admissions, the Board will infer such an object by considering the totality of the union's conduct. *Building Service Employees Local 87 (Liberty House/Rhodes)*, 223 NLRB 30, 33 (1976); *IBEW, Local 953 (Erickson Electric Co.)*, 154 NLRB 1301, 1305 (1965). Moreover, in such cases, the trier of fact, when assessing a union's claim of a purely legitimate object, must:

> always carefully scrutinize the circumstances surrounding the . . . picketing to determine if the union pursuing this course of action has accepted the required limitations . . . .

*Local 88, Teamsters (West Coast Cycle Supply Co.)*, 208 NLRB 679, 680 (1974). Accord: *N.L.R.B. v. Knitgood Workers Union Local 155*, 403 F.2d 388, 390-391 (2d Cir. 1968).

Among the numerous factors traditionally considered in determining the objects of a union's picketing are: the words employed on the picket signs; the parties prior relations; the background against which the dispute arose; the setting in which the dispute arose; the setting in which the picketing occurred; the union's assertions of purported object; and any actions or statements of union agents inconsistent with the asserted object. See, e.g., *San Francisco Culinary Workers (McDonald's System of California)*, 203 NLRB 719, 725 (1973), enf'd. as modified, 501 F.2d 794 (D.C. Cir. 1974); *Retail Clerks International Association No. 899 (State-Mart, Inc.)*, 166 NLRB 818, 822, n. 6 enf'd 404 F.2d 855 (9th Cir. 1968).

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

11

In the pleadings in this case, Petitioner presented affidavits establishing that, despite claims to the contrary, an object of Respondent's picketing has been to force Golden Gate University to recognize Respondent as the collective-bargaining representative of certain of Golden Gate University's employees. Here, Respondent's placards include statements such as, "Golden Gate University was Unfair," "Justice for Janitors," and "Janitors have families too." See *Hotel & Restaurant Employees Local 274 (Stadium Hotel Partners),* 314 NLRB 982, 986 (1994) (while some picket signs contained area standards message, others contained language such as "This hotel – unfair," signifying same recognitional object as earlier unlawful picketing). Respondent's placards indicate a recognitional object.

The leaflets additionally demonstrate Respondent's recognitional object. In a flyer, Respondent states,

> "SEIU Local 87 wants to work with GGU to ensure the janitors get proper representation, the students needs are met and that the valuable services being provided remain affordable for GGU which is why we have asked GGU to sit down and discuss the issues with us. GGU has refused to even negotiate."

(Aff. 19). The leaflet itself and the chanting "GGU is unfair" supports the finding that Respondent is seeking recognition. Another flyer asserts that "no janitors be fired or laid off until the university sits down with Local 87." (Aff. 18). *Graphic Communications Local 1-M (Heinrich Envelope),* 305 NLRB 603, 605 (1991). (the union was still attempting to obtain employment for its terminated members, a "bargaining" objective within the meaning of Section 8(b)(7)). Respondent's flyer is evidence that it is trying to save its janitors jobs.

Another of Respondent's leaflets states,

> Office & Professional Employees International Union, Local 3 is not representing the janitors at GGU. Local 3 has not assumed representation

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

12

for these workers. Although Local 3 is a sister union of SEIU Local 87 they represent completely different industries and in San Francisco SEIU Local 87 represents janitors.

(AFF 19). This further demonstrates that Respondent specifically seeks to represent the janitors, and does not want Golden Gate University's existing wall-to-wall unit of employees to accrete the new janitor employees. In these circumstances, it is evident that an object of the Respondent's picketing of the Golden Gate University is to achieve a continuation of the Respondent's former representative status of janitors employed by Able Building Maintenance, either by establishing a bargaining relationship directly with the Golden Gate University or by forcing the Employer to subcontract work to an entity having a bargaining relationship with the Respondent.

Though Respondent claims that the purpose of the picket is to demonstrate to the public that Golden Gate University's janitors are not represented by a union, or that there is not a collective-bargaining agreement, in order for the picketing to be privileged under the publicity proviso of 8(b)(7)(C), the pickets' language would have to follow that of the proviso. See *Hotel & Restaurant Employees Local 681 (Crown Cafeteria II)*, 135 NLRB 1183, 1185 *1962), aff'd sub. non. *Crown Cafeteria v. NLRB*, 327 F.2d 351 (9th Cir. 1964), where the Board noted that the statutorily-protected phrases, "does not employ members of" clearly imports a present object of organization, and "[does not] have a contract with" just as clearly implies a recognitional and bargaining object. The Board has consistently adhered to this holding. In *Plumbers Local 32 (Robert E. Bayley Construction)*, 315 NLRB 786, 790 (1994), the Board held that picketing was within the scope of the publicity proviso where the union truthfully apprised the public that the employer did not employ its members, despite the union's evident recognitional object. Respondent's failure to use the language that substantially tracks that of the proviso, its failure to make a recognitional disclaimer, and its failure to acknowledge Golden Gate

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

13

University does have a bargaining relationship with OPEIU Local 3, renders the picketing unprivileged. Because Respondent did not actually state that Golden Gate University did not have a contract with it or that the janitors are non-union, its picketing does not fall under the publicity proviso.

This cases involves alleged violations of Section 8(b)(7)(C) which specifically identifies the types of conduct that are prohibited as including picketing, where an object of that picketing is a recognitional or representational object, and if such picketing has been conducted without a representation petition being filed with the Board within a reasonable period, not to exceed 30 days from the onset of the picketing. Thus, in view of the specificity of Section 8(b)(7)(C) of the Act, Respondent's language in the placards and flyers was sufficiently unclear and thus the picketing violates Section 8(b)(7)(C).

### B.   *"Irreparable Harm" Presumed*

As demonstrated above, Petitioner has met the 'probability of success' prong of the preliminary injunction test set forth in *Miller*. Therefore, under the *Miller* test, the court should now "**presume** [Petitioner] has met the 'possibility of irreparable injury' prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public. Therefore, further inquiry into irreparable injury is unnecessary." *Miller* at 460.

Even if it were not presumed, the evidence strongly supports the conclusion that there will be irreparable harm if injunctive relief is not granted. In evaluating whether irreparable injury to the policies of the Act is threatened, as well as in balancing the hardships, the district court must "take into account the probability that declining to issue the injunction will permit the allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority." *Miller*, 19 F.3d at 460,

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

citing *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 545 (1987); *Scott v. Stephen Dunn & Associates,* 241 F.3d 652, at 667-668, 669 (9th Cir. 2001).

Respondent has been picketing Golden Gate University for nearly two months. Though the picketers have not prevented employees from crossing the picket line and working and all deliveries have been made, the picketing and noise has nonetheless been disruptive to students and faculty and employees. (Aff. 14). If Respondent is allowed to resume its unlawful picketing after Petitioner has sought injunctive relief, and while the underlying unfair labor practices are litigated before the Board, any remedial Board order obtained by Petitioner will be effectively meaningless.

C.   *"Balance Of Hardships"*

A balancing of the hardships among the parties clearly favors the imposition of the requested temporary injunction. Significantly, Respondent would not be unduly impacted by the injunction, because the injunction simply requires that Respondent abide by the provisions of Section 8(b)(7)(C) of the Act. On the other hand, if Respondent is allowed to continue its unlawful picketing, Golden Gate University will continue to face disruptions to the operation of its school and bear the burden of Respondent's misinformation campaign.

D.   *Public Interest*

The public interest will be advanced by the granting of injunctive relief in this case. By providing an effective remedy to the egregious and long-term unlawful picketing by Respondent in this matter, the Board will have maintained the integrity of the Act. Moreover, "the public interest is to ensure that an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge." *Scott v. Stephen Dunn & Associates,* 241 F.3d at 657, quoting *Miller v. California Pacific,* 19

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

F.3d at 460. Finally, the passage of Section 8(b)(7)(C) of the Act is itself an implied finding by Congress that violations of that Section of the Act will harm the public. *Miller* at 460.

V.  **Conclusion**

For the foregoing reasons, it is respectfully submitted that Petitioner has established that the issuance of the injunction in this case meets the just and proper standard set forth in *Overstreet*, and respectfully asks the Court to grant the petitioned-for injunctive relief.

DATED AT San Francisco, California, this 25th day of July, 2007.

OLIVIA GARCIA
Regional Attorney, Region 20

ROBERT J. BUFFIN
Deputy Regional Attorney, Region 20

CHRISTY J. KWON
Attorney, Region 20

CECILY A. VIX
Attorney, Region 20

_____
CECILY A. VIX, Attorney for Petitioner
NATIONAL LABOR RELATIONS BOARD

Memorandum of Points and Authorities In Support
Of Petition For Injunction Under Section 10(l) of the
National Labor Relations Act

16