DAN SIEGEL, SBN 56400
JANE BRUNNER, SBN 135422
JOSE LUIS FUENTES, SBN 192236
SIEGEL & YEE
499 14th St, Suite 220
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Subpoenaed Party
SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 87

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. NORELLI, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, Local 87,<br><br>Respondent. | **No. C 073808 MJJ**<br><br>**ERRATA RESPONDENT'S ANSWER TO OSC RE: INJUNCTION**<br><br>**Hearing: August 2, 2007**<br>**Time:     3:30 p.m.**<br>**Courtroom:  11 (19th Fl.)**<br><br>**Judge Martin J. Jenkins** |

**ERRATA RESPONDENT'S ANSWER TO OSC RE: INJUNCTION**

1   **I.      INTRODUCTION**

2          This Court is being asked by the National Labor Relations Board (the "NLRB" or the

3   "Board") to issue a speech-restricting injunction that attacks content as content.  The Board has

4   targeted and is attempting to use this Court's equitable power to suppress the particular ideas of

5   SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 87, herein Local 87.   If the

6   Court, on the motion of the Board, enjoins peaceful picketing at Golden Gate University, herein

7   GGU, where a current labor dispute exists, it will enjoin the expression of pro-union views based

8   on the content of Local 87's message.  The First Amendment removes "governmental restraints

9   from the arena of public discussion, putting the decision as to what views shall be voiced largely

10  into the hands of each of us, in the hope that use of such freedom will ultimately produce a more

11  capable citizenry and more perfect polity  . . . ."  (*Cohen v. California*, 403 U.S. 15, 24, 91 S.Ct.

12  1780, 1786, 29 L.Ed.2d 284 (1971)).  The First Amendment abhors content-based regulation that

13  restricts particular viewpoints, and prohibits public discussion of an entire topic.  "[T]he First

14  Amendment means that government has no power to restrict expression because of its message,

15  its ideas, its subject matter, or its content."  (*Police Department of Chicago v. Mosley*, 408 U.S.

16  92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972); see *Cox v. Louisiana*, 379 U.S. 536, 580-

17  581, 85 S.Ct. 466, 469-470, 13 L.Ed.2d 487 (1965) (opinion of Black, J.).)  Before this Court

18  issues an injunction prohibiting Local 87 from picketing at GGU, it must apply heightened

19  scrutiny to the Board's content-based request for a restriction against Local 87's truthful message

20  in their signs, slogans and pamphlets.  Before this Court issues an injunction prohibiting lawful

21  picketing at GGU, it must require the Board to show that its request is necessary to serve a

22  compelling government interest and that it is narrowly drawn to achieve that end.  (*Perry Ed.

23  Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954-955, 74 L.Ed.2d 794

24  (1983).  (To enforce a content-based exclusion the State must show that its regulation is necessary

25  to serve a compelling state interest and that it is narrowly drawn to achieve that end.))  The Board

26  has provided no compelling interest to restrict Local 87's truthful picket signs, slogans, and

27  pamphlets besides its belief that it has unfettered discretion to suppress pro-union views in favor

28  of GGU.  Moreover the relief being sought, to prevent Local 87 picketing at GGU, is not

1  narrowly tailored to achieve any legitimate ends the Board might put forward in their Response to

2  Local 87's answer.

3  **II.    UNDISPUTED FACTS**

4         Respondent Local 87, has not picketed in front of GGU, main entrance at 536 Mission

5  Street in San Francisco, California since July 24, 2007, out of fear of Board action that depletes

6  the pocket books of janitors.  Local 87 had been engaged in peaceful informational picketing at

7  GGU from May 29, 2007 to June 30, 2007.  From July 1, 2007 to July 23, 2007, Local 87's

8  picketing became recognitional and arguably organizational in nature. Local 87 has not prevented

9  employees from crossing the picket line or working and all deliveries have been made to GGU.

10        Office and Professional Employees International Union Local 3, herein OPEIU Local 3,

11 does not represent, nor will they represent the ten new employees hired by GGU as custodial and

12 facility maintenance workers.  (Declaration of Lori Liederman, business representative of OPEIU

13 Local 3.)  The Board seeks to regulate the content of Local 87's signs, slogans and pamphlets to

14 suppress pro-union views by having this Court issue an injunction prohibiting lawful picketing at

15 GGU.  There has been no finding by the Board that Local 87 has engaged in unfair labor practice.

16
17 **III.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ENJOIN
       THE CONTENT OF LOCAL 87'S MESSAGE AS THE PROHIBITION STRIKES AT
       THE HEART OF THE FREEDOM TO SPEAK**

18        The injunction being sought by the Board to enjoin Local 87 from engaging in protected

19 National Labor Relations Act, herein NLRA, Section 7 activity, when they distribute handbills

20 and hold picket signs outside GGU, defies logic.  Section 7 guarantees employees "the right to

21 self-organization, to form, join, or assist labor organizations."  (29 U.S.C. § 157.)  Usually it is

22 an employer that violates the NLRA if it "interfere[s] with, restrain[s], or coerce[s] employees" in

23 the exercise of their Section 7 rights.  (29 U.S.C. § 158(a)(1).)  Section 7 protects the right of

24 employees "to improve terms and conditions of employment ... through channels outside the

25 immediate employee-employer relationship." (*Eastex, Inc. v. NLRB*, 437 U.S. 556, 565, 98 S.Ct.

26 2505, 57 L.Ed.2d 428 (1978).)  The Board's attempt to justify its request for an injunction under

27 Section 8(b)(7) of the NLRA which provides in relevant part:  "It shall be an unfair labor practice

28

1  for a labor organization or its agents ... to picket or cause to be picketed, or threaten to picket or

2  cause to be picketed, any employer where an object thereof is forcing or requiring an employer to

3  recognize or bargain with a labor organization as the representative of his employees, or forcing

4  or requiring the employees of an employer to accept or select such labor organization as their

5  collective bargaining representative...." (29 U.S.C. § 158(b)(7).)  However, Section 8(b)(7)(C)

6  provides that nothing in that subsection "shall be construed to prohibit any picketing or other

7  publicity for the purpose of truthfully advising the public (including consumers) that an employer

8  does not employ members of a labor organization." (29 U.S.C. § 158(b)(7)(C).)  What makes the

9  NLRB request for an injunction unusual in this case is that Section 7 protects Union members and

10  representatives that engage in activities to pressure their employer during a labor dispute, even

11  when picketing a sister company owned by the same parent company.  (See, e.g., *Sears, Roebuck*

12  *& Co. v. San Diego County Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209

13  (1978); *NLRB v. Calkins, 187 F.3d 1080,* 1086-87 *(9th  Cir.1999)*.)  Therefore the Board's

14  request for an injunction against the Union can only be understood as an unconstitutional request

15  by Board officials who believe they have unbridled and unfettered discretion to regulate the

16  content of Local 87 speech by interpreting the scope of "truthful advisement" on a case by case

17  basis.

## IV.    THE BOARD'S LIKELIHOOD OF SUCCESS ON THE MERITS BEFORE THE NINTH CIRCUIT AND SUPREME COURT IS DUBIOUS

20          The Board's threat of an injunction and the current request for an injunction acts, as a

21  prior restraint, the threat and the request for an injunction "intimidate[s] parties into censoring

22  their own speech, even if the discretion and power are never actually abused."  (*City of Lakewood*

23  *v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).)

24  Second, it empowers the Board "to roam essentially at will, dispensing or withholding permission

25  to speak, assemble, picket, or parade according to their own opinions regarding the potential

26  effect of the activity in question on the 'welfare,' 'decency,' or 'morals' of the community."

27  (*Shuttlesworth v. City of Birmingham, Alabama,* 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162

28  (1969).)  Therefore, the Board's interpretation of Section 8(b)(7)(c) "truthful advisement"

1    subjects the Union's leaflets and picketing signs to a standardless approval system that is

2    amenable to a facial challenge because of the attendant risk of censorship, both self-imposed and

3    official. (*See Saia v. New York*, 334 U.S. 558, 562, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) [Chief of

4    Police had unconstitutional and uncontrolled discretion to thwart the channels of communication

5    by denying permits for loud speakers as an obstruction and no standards prescribed for the

6    exercise of his discretion.].)  No where in the Board's request for the injunction against Local 87

7    does the Board present evidence that Local 87 is not engaged in "trustful advisement" of the

8    current labor dispute at GGU.

9        An injunction from this Court will be a prior restraint on protected activity.  (*See*, e.g.,

10   *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)

11   (refusing to enjoin publications of the "Pentagon Papers"); *Vance v. Universal Amusement Co.*,

12   445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam) (holding that Texas public

13   nuisance statute which authorized state judges, on the basis of a showing that a theater had

14   exhibited obscene films in the past, to enjoin its future exhibition of films not yet found to be

15   obscene was unconstitutional as authorizing an invalid prior restraint).

16       To begin with, an injunction against Local 87's speech in this case by this Court will be

17   the very prototype of the greatest threat to First Amendment values, the prior restraint.  "The term

18   prior restraint is used 'to describe administrative and judicial orders forbidding certain

19   communications when issued in advance of the time that such communications are to occur.' ...

20   [P]ermanent injunctions, i.e.,-court orders that actually forbid speech activities-are classic

21   examples of prior restraints."  (*Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766,

22   2771, 125 L.Ed.2d 441 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-

23   14 (1984) (emphasis added in Alexander)). See also 509 U.S., at 572, 113 S.Ct., at 2783 ("[T]he

24   [prior restraint] doctrine ... encompasses injunctive systems which threaten or bar future speech

25   based on some past infraction") (KENNEDY, J., dissenting).  We have said that a "prior restraint

26   on expression comes to this Court with a 'heavy presumption' against its constitutional validity,"

27   *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1

28   (1971) (quoting *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 181, 89 S.Ct.

347, 351, 21 L.Ed.2d 325 (1968)), and have repeatedly struck down speech-restricting injunctions.  *See*, e.g., *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957);  *Keefe, supra;  New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971);  *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976);  *National Socialist Party of America v. Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977);  *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (statute authorizing injunctions);  *CBS Inc. v. Davis*, 510 U.S. 1315, 114 S.Ct. 912, 127 L.Ed.2d 358 (1994) (BLACKMUN, J., in chambers) (setting aside state-court preliminary injunction against a scheduled broadcast).)  If the Court grants the injunction it will be because of the content of the Union's expression, as was the case in *New York Times Co.* and *Vance*, and not because of any prior unlawful conduct.  The parties are in agreement that the Local 87 has not violated any laws in their picketing activity.  The heart of this case turns on whether the Board has the authority to require the union representatives to add language to their handbills and picketing signs the union representatives distributed and display on GGU premises. Therefore, the Court has to examine whether the Board's request is consistent with California free speech protections under the California Constitution.

## V.    THE BOARD'S LIKELIHOOD OF SUCCESS ON THE MERITS BEFORE THE NINTH CIRCUIT AND SUPREME COURT IS DUBIOUS DUE TO CALIFORNIA STRONG PUBLIC INTEREST IN FREE SPEECH

Local 87 contends that the Board's request for an injunction is an impermissible content-based restriction that violates Article 1, section 2 of the California Constitution[1].  The Board has no lawful right to prevent Local 87 from distributing a handbill and displaying picketing signs that contain protected speech.  In analyzing questions of state law, this Court is bound by the decisions of the state's highest court.  (*NLRB v. Calkins,* 187 F.3d at 1089 (citing *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir.1995)).)  When the state's highest court

---

[1] The California Constitution is "more protective, definitive and inclusive of rights to expression and speech" than the First Amendment to the United States Constitution. *Robins v. Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 908, 910, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), aff'd, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980)

1    has not squarely addressed an issue, we must "predict how the highest state court would decide

2    the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes,

3    treaties and restatements for guidance." (*Id.*)  The public policy of California favors concerted

4    activities of employees for the purpose of collective bargaining or other mutual aid or protection.

5    (Lab.Code, § 923; *see Messner v. Journeymen Barbers Etc. International Union* (1960) 53 Cal.2d

6    873, 882, 4 Cal.Rptr. 179, 351 P.2d 347 (This Court's interpretation of section 923 is in accord

7    with the Unites States Supreme Court's interpretation of a similar provision of the Taft-Hartley

8    Act., § 7, 29 USC § 157.  Pointing out that basic to the right guaranteed to employees in § 7 to

9    form, join or assist labor organizations, is the right to engage in concerted activities to persuade

10    other employees to join for their mutual aid and protection.).)  The United States Supreme Court

11    has held that peaceful picketing for recognition by a union that does not represent a majority of

12    the employees is not an unfair labor practice under Section 8(b)(1)(A).  (*National Labor Relations*

13    *Board v. Drivers' Local* 639, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 170 (1960).)

14        To analyze whether the Board's rule prohibiting the distribution of literature and picketing

15    signs that do not mention Local 87 is valid under the California Constitution, the Court must first

16    determine whether the rule is content-neutral or content-based.  (*Los Angeles Alliance for*

17    *Survival v. City of Los Angeles*, 22 Cal.4th 352, 364-65, 93 Cal.Rptr.2d 1, 993 P.2d 334 (2000).)

18    California state courts borrow from federal First Amendment jurisprudence to analyze whether a

19    rule is content-based or content-neutral.   (*Id.* at 364, 93 Cal.Rptr.2d 1, 993 P.2d 334; *Savage v.*

20    *Trammell Crow Co*., 223 Cal.App.3d 1562, 273 Cal.Rptr. 302 (1990).)   Content-based

21    regulations receive strict scrutiny because "content-based restrictions are especially likely to be

22    improper attempts to value some forms of speech over others, or are particularly susceptible to

23    being used by the government to distort public debate."  (*City of Ladue v. Gilleo*, 512 U.S. 43, 60,

24    114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (O'Connor, J., concurring).)

25        A rule is content-neutral if it is "unconcerned with the literal content of the spoken or

26    written words."  (*Los Angeles Alliance for Survival*, 22 Cal.4th at 368, 93 Cal.Rptr.2d 1, 993 P.2d

27    334;  *see* also *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82

28    L.Ed.2d 221 (1984) (A restriction on speech is content-neutral if it is "justified without reference

6

1   to the content of the regulated speech.").)  California courts and the United States Supreme Court

2   hold that speech-regulating rules are content-neutral when the rule is not related to the subject or

3   topic of the speech.  (*See*, e.g., *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105

4   L.Ed.2d 661 (1989) (New York City law regulating permissible level of noise in Central Park is

5   content-neutral because it is justified without content of speech);  *Los Angeles Alliance for*

6   *Survival*, 22 Cal.4th at 380, 93 Cal.Rptr.2d 1, 993 P.2d 334 (Los Angeles' ban on aggressive

7   solicitation for immediate monies is content-neutral).)

8           On the other hand, "[a]s a general rule, laws that by their terms distinguish favored from

9   disfavored speech on the basis of the ideas or views expressed are content based."  (*Crawford v.*

10  *Lungren*, 96 F.3d 380, 384 (9th Cir.1996) (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622,

11  643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)).)   A rule is defined as a content-based restriction

12  on speech when the regulating party must examine the speech to determine if it is acceptable.

13  (*Desert Outdoor Adver. v. City of Moreno Valley*, 103 F.3d 814, 820 (9th Cir.1996).)  In addition,

14  courts consider a rule content-based when it establishes a general ban on speech, but maintains

15  exceptions for speech on certain subjects.  ((*Gilleo*, 512 U.S. at 60, 114 S.Ct. 2038 (city's

16  ordinance regulating signs on private property is content-based because it had ten exceptions to

17  the rule); *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S.  410, 113 S.Ct. 1505, 123

18  L.Ed.2d 99 (1993) (ordinance banning commercial handbills on news racks but allowing

19  newspapers is content-based);  *Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir.1998) (Menlo

20  Park's regulation banning posting of signs on public property except for real estate, governmental,

21  and safety and traffic signs is content-based).)

22          Therefore the Board's rule restricting Local 87 from engaging in non-commercial speech

23  if the slogans, pamphlets, and picket signs do not contain the Union's name is similarly content-

24  based.  Like the regulation at issue in *Gilleo*, the Board must review the literature and picket signs

25  to determine if it meets the Board's approval and if it will approve the literature or picket signs

26  for display without the threat of Board action.  Petitioners' rule goes to the underpinnings of

27  content-based free speech protections because it is prohibiting speech that is counter to GGU's

28  interests.

## VI.    NO IRREPARABLE HARM CAN BE PRESUMED WHEN THE BOARD IS ENGAGING IN PRESUMPTIVELY UNCONSTITUTIONAL CONTENT BASE REGULATION

Because the Board is engaging in content-based regulation of the Union the injunction should be denied because content-based regulations are presumptively unconstitutional.  (*R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).)  A content-based restriction on speech will pass constitutional muster only if it employs the least restrictive means to further a compelling interest.  *Frisby v. Schultz*, 487 U.S. 474, 483, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988).  A content-based rule is unconstitutional "[a]bsent a demonstrably content-neutral basis for selectively restricting [this speech] to the exclusion of other categories of speech."  (*Press Communications*, 31 Cal.App.4th at 40, 36 Cal.Rptr.2d 456.)  The burden is on the Board to prove that the restriction is justified without reference to the content of the regulated speech.  (*Rock Against Racism*, 491 U.S. at 791, 109 S.Ct. 2746.)

However the Board will not be able to justify their rule under California law or federal law because as they admit, the Board maintains and enforces the rule because they disfavor speech that does not track the language of Section 8(b)(7)(c) without placing similar restrictions on GGU.  California courts and the Supreme Court have struck down similar restrictions that are "based on hostility-or favoritism-towards the underlying message expressed."  (*R.A.V.*, 505 U.S. at 377, 112 S.Ct. 2538 (finding city ordinance that criminalized placing inflammatory literature on private property was an unconstitutional content-based regulation); *see* also *Mosley*, 408 U.S. at 96, 92 S.Ct. 2286 ("Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views."); *U.C. Nuclear Weapons Labs Conversion Project*, 154 Cal.App.3d 1157, 201 Cal.Rptr. 837 (government lab's policy of limiting ideologically incompatible speech in lab's facility impermissibly favored government speech over dissenting views).)  Similarly the California Constitution does not permit censorship of contrary ideas.  (*Los Angeles Alliance for Survival*, 22 Cal.4th at 376-77, 93 Cal.Rptr.2d 1, 993 P.2d 334.)  Therefore, the Court should deny the

SIEGEL & YEE
499 14th Street, Suite 220
Oakland, CA  94612
510-839-1200

**ERRATA RESPONDENT'S ANSWER TO OSC RE: INJUNCTION**

injunction as the Board's compelling reason for seeking the injunction is because "it can", and the Board has not explored less restrictive means.

## VII.    THE BALANCING OF THE HARDSHIPS FAVORS PROTECTED SPEECH AND THE INJUNCTION SHOULD BE DENIED

The Board has not proved that Local 87 has engaged in a misinformation campaign.  The evidence presented by the Board suggests that the Board does not agree with the content of Local 87's message because the signs, slogans, and pamphlets do not track the language of 29 U.S.C. § 158(b)(7)(C).  There is no dispute that seven janitors hired by GGU have chosen Local 87 to represent them.  There is no dispute that Local 3 does not represent these janitors.  There is no dispute that GGU will not bargain with Local 87.  There is no dispute that GGU is using Local 3 as a weapon to bring about union strife.  GGU can end the stalemate by recognizing Local 87 as the bargaining agent for the janitors at any time.

## VIII.    THE PUBLIC INTEREST IS AGAINST PRIOR RESTRAINTS ON SPEECH

The public interest will not be advanced by granting an injunction that prohibits Local 87 from picketing at GGU.  Suppressing Local 87's truthful slogans, pamphlets, and signs serves no compelling government interest besides suppressing pro-union viewpoint.  The public policy of California and the California Constitution favors concerted activities of employees for the purpose of collective bargaining or other mutual aid or protection and does not permit censorship of contrary ideas.  (Lab.Code, § 923; *see Messner v. Journeymen Barbers Etc. International Union* (1960) 53 Cal.2d 873, 882, 4 Cal.Rptr. 179, 351 P.2d 347.)  The United States Supreme Court has held that peaceful picketing for recognition by a union that does not represent a majority of the employees is not an unfair labor practice under Section 8(b)(1)(A).  (*National Labor Relations Board v. Drivers' Local* 639, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 170.)  The United State Supreme Court has recognized a right in unions to 'use all lawful propaganda to enlarge their membership.' *American Steel Foundries v. Tri-City Central Trades Council*, 257 U.S. 184, 209, 42 S.Ct. 72, 78, 66 L.Ed. 189 (1921).  Local 87 has not engaged in any "egregious and long-term unlawful picketing," as alleged by the Board, because Local 87 was the exclusive bargaining agent of GGU's janitors from May 29, 2007 to June 30, 2007.  During this time

1    period, Local 87 could only have engaged in informational picketing and not recognitional or

2    organization picketing as it was the exclusive representative of GGU's janitor.  When GGU did

3    not renew its contract with Able Building Maintenance on July 1, 2007, Local 87's picketing

4    became recognitional and organizational in nature.  Local 87 continued the picketing from July 1,

5    2007 until July 23, 2007 when they stopped picketing due to the Board's threats of action against

6    Local 87.  Therefore, Local 87 only picketed for a total of 23 days at GGU.  Local 87 is filing a

7    petition with the Board to be recognized as the exclusive bargaining agent of GGU's janitors.

8    Lastly, the passage of Section 8(b)(7)(c) of the NLRA clearly states Congress's finding that

9    nothing in that subsection "shall be construed to prohibit any picketing or other publicity for the

10   purpose of truthfully advising the public (including consumers) that an employer does not employ

11   members of a labor organization."  29 U.S.C. §  158(b)(7)(C).

12   **IX.    CONCLUSION**

13          The vice of content-based regulation by the Board in this case is that its interpretation of

14   "truthful advisement" proviso lends itself to being used for invidious thought-control purposes of

15   Local 87's message.  Local 87 resisted the Board's unfettered discretion to regulate the content of

16   its slogan, pamphlets and signs that were truthful and lawful under 29 U.S.C. § 158(b)(7)(C) and

17   the Board now seeks the power of this Court to restrain protected speech.  Local 87 requests that

18   this Court reject the Board's request for an overboard injunction because the Board has not shown

19   a compelling government interest that is narrowly tailored to enjoin peaceful protected speech.

20   7/31/2007                                    Respectfully Submitted
                                                  Siegel & Yee
21

22                                       By:    _____/s/_____
23                                              JOSE LUIS FUENTES,
                                                Attorney for
24
                                                SERVICE EMPLOYEES
25                                              INTERNATIONAL UNION, LOCAL 87

26

27

28