OLIVIA GARCIA
ROBERT J. BUFFIN
CHRISTY J. KWON
CECILY A. VIX
National Labor Relations Board, Region 20
901 Market Street, Suite 400
San Francisco, CA  94103
Telephone: (415) 356-5154/ (415)356-5175
Facsimile: (415) 356-5156

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. NORELLI, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 87<br><br>Respondent | No. C07-03808 MJJ<br><br>**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**<br><br>Hearing: August 2, 2007<br>Time: 3:30 PM<br><br>Judge Jenkins |

## I. INTRODUCTION

Respondent's Answer failed to provide a sound legal or factual basis for the Court to deny Petitioner's request for injunctive relief under Section 10(l) of the National Labor Relations Act, herein Act. First, the Court does not run afoul of the First Amendment by enjoining Respondent's recognitional picketing because the Supreme Court has specifically recognized that such picketing is a mixture of conduct and communication -- it is not pure speech and is thus subject to greater regulation.

Second, Respondent misconstrues what the undisputed facts are in this case. Contrary to Respondent's representation in its Answer, Petitioner's Rebuttal affidavits will clearly demonstrate to the Court that recognitional picketing began, at the latest, on June 8, 2007. Respondent has provided no evidence to support its assertion that recognitional picketing began on July 1, 2007.

Third, even under the heightened "just and proper" standard set forth in *Overstreet v. United Brotherhood of Carpenters and Joiners of America, Local Union No. 1506*, 409 F.3d 1199 (2005) the facts in this case provide an ample basis for this Court to issue an injunction to stop Respondent from continuing its unlawful recognitional picketing.

## II. INJUNCTION AGAINST UNLAWFUL RECOGNITIONAL PICKETING DOES NOT RUN AFOUL OF THE FIRST AMENDMENT

The Petitioner is seeking an interim preliminary injunction restraining Respondent from prohibited recognitional picketing pending the final disposition of the matter now before the Board on a charge filed by Golden Gate University ("GGU"). "The legislative history of Section 10(l), which was added to the Act in 1947, indicates that Congress perceived the need for interim relief during the administrative hearing process in order to prevent substantial injury to employers before the Board could obtain judicial enforcement of its decisions following final

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 1

adjudication." *Miller v. United Food and Commercial Workers Union*, 708 F.2d 467 at 470 (9th Cir. 1983).

Such temporary injunctions against further unlawful recognitional picketing by Respondent would not unduly restrict Respondent's constitutional rights. Since the enactment of Section 8(b)(7)(C) in 1959, open-ended union picketing of employers for recognition or organizational purposes has been regulated by the Act. Congress made clear that by enacting that Section, it was allowing such picketing "only under limited conditions."[1] These conditions include the filing of a petition within 30 days so that an expedited election can take place, permitting the question concerning representation underlying the picketing to be resolved promptly.[2] Also, the second proviso to subsection (C) affords an immunity to so-called "publicity" picketing "for the purpose of truthfully advising the public . . . that an employer does not employ members of, or have a contract with, a labor organization" as long as such picketing does not have the effect of inducing individuals to cease performing work or making deliveries. The kind of limitations on picketing found in Section 8(b)(7)(C) of the Act does not run afoul of

---

[1] See *Volume II, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959*, at 1377 (3) (Sen. Kennedy's comments) (Government Printing Office 1985). Section 8(b)(7)(C) as enacted was a compromise between the Senate and House versions of the bill, the later which "would have virtually banned" all picketing for organizational and recognitional picketing. *II Leg. Hist. LMRDA of 1959*, at 1720 (3).

[2] See *Moore Laminating*, 137 NLRB at 732-733.

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 2

the First Amendment because, as recognized by the Supreme Court, "picketing is a 'mixture of conduct and communication'"[3] It is not pure speech, and is thus subject to greater regulation.

In determining whether injunctions which limit or prohibit picketing transgress the First Amendments' free speech guarantee, the courts long have recognized that: "Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated."[4] It is now well-settled that picketing constitutionally may be regulated as to time, place, and circumstance or completely prohibited, if to do so is reasonably necessary to effectuate a significant governmental policy or interest.[5] Thus, in *Miller v. United Food and Commercial Workers Union*, 208 F.2d 467, (9th Cir. 1983), the 9th Circuit Court of Appeals held that ordering a hiatus on picketing for a period of time would be constitutional if it furthers an important or substantial governmental interest, if governmental interest is unrelated to the suppression of free expression, and if incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of that interest.

---

[3] *DeBartolo v. Fla. Gulf Coast Building & Construction Trades Council*, 485 US 568, 580 (1988), quoting *NLRB v. Retail Store Employees*, 447 US 607 (1980) (J. Stevens, concurring).

[4] *Bakery & Pastry Drivers, Local 802 v. Wohl*, 315 US 769, 775 (1942) (concurring opinion), quoted with approval in *Teamsters Union v. Vogt, Inc.*, 354 US 284, 289 (1957) and *Hughes v. Superior Court*, 339 US 460, 464-465 (1950).

[5] *Police Department of Chicago V. Mosley*, 408 US 92, 98-99 (1972) and cases there cited; *Teamsters v. Vogt*, 354 US at 293.

---

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 3

Here, there is substantial government interest in preserving the Board's remedy while GGU awaits the administrative adjudication of its Section 8(b)(7)(C) charge. If the Petitioner is allowed to continue its unlawful recognitional picketing while GGU awaits a final Board order to issue, Petitioner will have achieved what it was not allowed to do under the Act, that is, prolonged recognitional picketing beyond 30 days. There is a substantial government interest in maintaining the integrity of the Act.

Second, the governmental interest in enjoining unlawful recognitional picketing is unrelated to the suppression of free expression that is allowed under Section 8(b)(7)(C) of the Act. The Respondents have an unfettered right to pure speech, but not picketing, which is a mixture of speech and conduct. *NLRB v. Retail Store Employees Union, Local 1001*, 447 US 607, 100 S.Ct. 2372 (1980) (held that picketing is susceptible to constitutional regulation because it is a mixture of conduct and communication). The Respondent admits in its Answer that it has been engaging in picketing, with the only limitation being that the picketing was informational and peaceful in nature. See, Respondent Answer, 9:26 – 10:6.

Third, the incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of that interest, especially in light of the second proviso of Section 8(b)(7)(C) that gives Respondent's the unfettered right to engage in publicity proviso picketing as long as its picketing does not have the effect of inducing stoppage of deliveries or work by individuals. Respondent can exercise its rights under the second proviso of Section 8(b)(7)(C) even under the petitioned for Injunction.

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 4

### III. THE EVIDENCE CLEARLY ESTABLISHES RESPONDENT ENGAGED IN RECOGNITIONAL PICKETING FOR LONGER THAN 30 DAYS WITHOUT THE FILING A PETITION FOR RECOGNITION

Petitioner is submitting two rebuttal affidavits in response to Respondent's Answer which misconstrues what the undisputed facts are. The first affidavit contains testimony and documentary evidence that rebuts Respondent's assertion that it is "undisputed" that SEIU's picketing became recognitional only from July 1, 2007. Contrary to that assertion, Shulti's affidavit establishes that by June 8, 2007, SEIU began disseminating flyers to the public which demonstrated a recognitional object. Respondent states that it is the union in San Francisco that represents these janitorial and maintenance employees and is telling GGU that when it employs these types of employees, Respondent is the one that will represent them. The flyer states, among other things:

- "[f]ighting to keep workers unionized and ensuring that workers get the best and most appropriate representation possible is regular **union** practice"
- "[OPEIU] Local 3 has not assumed representation for these workers"
- "in San Francisco SEIU Local 87 represents janitors."
- "SEIU Local 87 wants to work *with* GGU to ensure the janitors get proper representation . . ."

Therefore, there is no factual basis to support any argument that SEIU Local 87's picketing has not exceeded a reasonable time period not to exceed 30 days from the commencement of such recognitional picketing. Respondent's picketing had a recognitional object at least beginning on June 8, 2007.

---

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 5

## IV. IT IS "JUST AND PROPER" FOR THE COURT TO ENJOIN RESPONDENT FROM LONG-TERM RECOGNITIONAL PICKETING BECAUSE PETITIONER HAS DEMONSTRATED A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

Section 10(l) of the Act directs District Courts to grant relief that is "just and proper" under traditional equitable criteria. In *Overstreet*, the 9th Circuit upheld the District Courts denial of an injunction under Section 10(l) of the Act because the Court concluded that the Regional Director did not have even a "fair chance" of success on the merits because a First Amendment issue was implicated and it could therefore not apply the ordinary principles of deference to the Board's interpretation of the Act. *Overstreet*, 409 F.2d, 1199, 1207. Here, unlike in *Overstreet*, the Petitioner has a high likelihood of success on the merits because no First Amendment has been raised such as the one found in *Overstreet*. In *Overstreet*, there was a serious question as to whether the Unions' conduct, specifically bannering, was "picketing" (speech plus conduct) as understood by the Supreme Court in *NLRB v. Retail Store Employees Union, Local 1001*, supra, or whether it was more akin to handbilling which is would raise greater constitutional concerns since it lacks the kind of confrontation that removed picketing from the category of pure speech. Here, Petitioner **admits** it has been engaging in picketing. See Respondent's Answer, page 2 and 9. Petitioner further admits that it has been engaged in recognitional picketing for 23 days, based on an argument unsupported by the evidence, that it did not have a recognitional object until July 1, 2007. Id. However, the Respondent's conduct before July 1 and after July 1 has been the same. Respondent declared as early as June 8, 2007, through flyers and picketing **directed at GGU**, that "in San Francisco SEIU represents Local 87 represents janitors." As such, there is no significant First Amendment issue raised because it is well-established that picketing is not pure speech and thus subject to greater regulation.

---

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

As no First Amendment concerns are raised in this case because it involves picketing, the Court can apply ordinary principles of deference given to the Board's interpretation of the Act, specifically, to the Board's interpretation of Section 8(b)(7)(C) of the Act.

Section 8(b)(7)(C) was enacted by Congress to restrain unions from engaging in certain types of recognitional picketing. Congress decided that such picketing was so pernicious to the public interest that it mandated under Section 10(l) of the Act, that regional attorneys file for injunctive relief if he or she had "reasonable cause to believe" that such unlawful picketing has occurred. Further, out of Congressional compromise, two provisos were added to the statute. The second proviso states that unions can engage in what is called "publicity" proviso picketing even though it may violate Section 8(b)(7)(C). Here, however, Respondent's picket signs and flyers simply do not comport with this publicity proviso. Respondent maintains that any truthful speech is allowed under the law. However, in *Smitley v. NLRB*, 327 F.2d 351 (1964), when the 9th Circuit held that the second proviso picketing is allowed as long as it was "addressed to the public and be truthful" and that "it must not induce other unions to stop deliveries or services" it was affirming the Board's decision that interpreted the scope of the second proviso. That Board decision was *Leonard Smitley and Joseph W. Drown, d/b/a Crown Cafeteria*, 135 NLRB 1183 (1962), and it clearly holds that second proviso allows picketing that truthfully advises the public that the employer does not have a contract with the union. Board cases have since applied this rule and have held that picket signs that posit complaints other than setting forth the

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 7

information prescribed in the second proviso are not privileged.[6] Thus, Respondent seeks an interpretation of the exception (the second proviso) which differs from Board law – one that would essentially swallow up the rule. As the Board's interpretation of the Act will receive deference since there is no valid constitutional issue raised in this case, the Petitioner has a high likelihood of success on the merits and therefore, the injunction should be granted.

## V. CONCLUSION

The Court has ample basis to grant an injunction, both on the law and on the facts. The injunction does not abridge on pure speech, as Respondent has admitted it has been engaging in picketing, which the Supreme Court held was not pure speech but rather speech plus conduct. Thus, having cleared any basis for a constitutional challenge, it is "just and proper" for the Court to issue an injunction. The injunction would merely enforce the balance that was struck by Congress when it enacted Section 8(b)(7)(C) and Section 10(l) of the Act regarding the rights of unions on one hand, and the rights of employers and employees on the other hand. The injunction will serve an important and substantial government interest because it will preserve the right of employees to choose or refrain from choosing a collective bargaining agent without the coercive atmosphere created by unlawful recognitional picketing while the parties await a final Board order prohibiting such conduct. Finally, the injunction is narrowly tailored so that it does not infringe on pure speech privileged under the First Amendment. It provides for "publicity" picketing under the second proviso of Section 8(b)(7)(C) of the Act. Therefore, if

---

[6] See *Local 275, Laborers International Union (S.B. Apartments)*, 209 NLRB 279, 284 (1973 (Board held that a picket sign stating that "Workers on this job . . . do not receive wages and working conditions as good as Local 275" constituted picketing unprotected by the proviso.

**PETITIONER'S REPLY BRIEF IN SUPPORT OF INJUNCTION**

Page 8

there is any incidental restriction on alleged First Amendment freedoms, it is no greater than is essential to the furtherance of important and substantial government interests.

DATED AT San Francisco, California, this 1st August, 2007.

_____
Christy J. Kwon
Counsel for Petitioner
National Labor Relations Board