IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. NORELLI, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, Local 87,<br><br>Respondent. | No. C 073808 MJJ<br><br>**[PROPOSED] ORDER DENYING PETITION FOR TEMPORARY INJUNCTION** |

**SIEGEL & YEE**
499 14th Street, Suite 220
Oakland, CA 94612
510-839-1200

**[PROPOSED] ORDER DENYING PETITION FOR TEMPORARY INJUNCTION**

On July 25, 2007, Petitioner Joseph P. Norelli ("Petitioner"), Regional Director of Region 20 of the National Labor Relations Board ("NLRB") submitted this petition for an injunction under 29 U.S.C. § 160(l) of the National Labor Relations Act against Respondent Service Employees International Union, Local 87 ("Respondent"). The Union opposes. The matter is fully briefed. The Court conducted a hearing on August 2, 2007.

## Background

Petitioner and Respondent are currently engaged in administrative proceedings before the NLRB. These proceedings involve the same conduct that is at issue in the instant petition. Golden Gate University (GGU), filed charges with the NLRB against Respondent alleging that Respondent engaged in unfair labor practices in violation of the National Labor Relations Act ("NLRA"). Specifically, the charges allege that Respondent violated § 8(b)(7)(C) of the NLRA, which prohibits (1) picketing that has as an object the forcing or requiring of an employer to recognize or bargain with a labor organization, and (2) such picketing must have been conducted without a petition under 9(c) of the NLRA having been filed within a reasonable period of time not to exceed thirty days. (subsection 8(b)(7)(C).  But the second of these conditions is limited by two provisos, and this case is particularly concerned with the second of these provisos which says, "nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization."  Subparagraph (C) goes on in the "unless" clause to provide that if an effect of the informational picketing "is to induce any individual employed by any other person in the course of his employment,

not to pick up, deliver or transport any goods or not to perform any services," the second of the main conditions remains in full force and the picketing is no longer permissive.

Here, Respondent has a primary dispute with GGU. GGU is a California non-profit corporation, with an office and place of business at 536 Mission Street, San Francisco, California, and has been engaged in the operation of a private nonprofit university. GGU's custodial services were provided by contractor, Able Building Maintenance, for several years. Able Building Maintenance employees working at Golden Gate University were represented by Respondent. GGU did not renew the contract with Able Building Maintenance that was set to expire on June 30, 2007. GGU directly hired ten new employees to do custodial and facility maintenance work. GGU is opposed to Respondent becoming exclusive bargaining agent of the ten new employees.

The conduct at issue involves picketing in front of Golden Gate University's main entrance at 536 Mission Street in San Francisco, California. The participants carry signs containing catchy shorthand, not discursive, speech and chant similar slogans. They distribute flyers to passing pedestrians outside of GGU's main entrance. The picketers have not prevented employees from crossing the picket line and working, and all deliveries have been made. GGU has responded by distributing its own flyer setting forth its position in the labor dispute.

In July of 2007, after the NLRB began investigating the unfair labor practices charges against Respondent, Respondent contacted Petitioner by letter and stated that the union was involved in informational picketing to inform the public that the Janitors at the University are not union members and there is no union contract at the time. Pet'n Exh. p.

25. On July 24, 2007, Respondent stopped picketing out of fear of having to defend Section 10(l) proceedings. Respondent's Declaration of Olga Miranda, ¶ 5. On July 23, 2007, Petitioner issued a complaint against Respondent based on the employer charges against the union. That matter is to be tried in an administrative proceeding before the NLRB on September 6, 2007. On July 25, 2007, Petitioner filed the instant petition for an injunction under § 10(l), seeking to bar Respondent from conducting informational picketing at GGU.

## Legal Standard

The prosecuting officer for the NLRB is required to seek federal injunctive relief under § 10(l) to maintain the status quo during the pendency of administrative proceedings on charges of unfair labor practices. Section 10(l) provides:

> Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph… 8(b)(7) ... of this title, the preliminary investigation of such charge shall be made forthwith ... If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law. 29 U.S.C. § 160(l).

In enacting § 10(l), Congress "perceived the need for interim relief during the administrative hearing process in order to prevent substantial injury to employers before the [NLRB] could obtain judicial enforcement of its decisions following final adjudication." *Miller v. United Food & Comm. Workers Union, Local 498, AFL-CIO*, 708 F.2d 467, 470 (9th Cir.1983).

The standard for granting an injunction under § 10(l) is the same as that for typical federal injunctive relief. In an unfair labor practices context, under § 10(l), a district court must determine whether granting an injunction would be just and proper. *Overstreet v. United Broth. of Carpenters and Joiners of America, Local Union No. 1506,* 409 F.3d 1199 (9th Cir. 2005). Because Petitioner seeks to enjoin the content of Respondent's informational message, there is a First Amendment backdrop in this case, and ordinary principles of deference to Board interpretation of the Act will not apply here. *Id.,* 409 F.3d at 1206. Therefore the likelihood of success standard applicable to this case is somewhat higher than in *Miller*, as the Court will not assume deference to the Board's ultimate conclusion. *Id.*

## Discussion

A. Section 8(b)(7)(C) of the NLRA

Under § 8(b)(7)(C), it is an unfair labor practice:

> to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:…
> (C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services. 29 U.S.C. § 158(b)(7)(C).

The intent underlying subsection (8)(b)(7)(C) is to safeguard Respondent against Petitioner's interference with legitimate picketing activity. *See N. L. R. B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639,* 362 U.S. 274, 291, 80 S.Ct. 706 (1960). The Ninth Circuit has explained,

> We think that, in substance, the effect of the second proviso to subparagraph (C) is to allow recognitional or organizational picketing to continue if it meets two important restrictions: (1) it must be addressed to the public and be truthful and (2) it must not induce other unions to stop deliveries or services. *Smitley v. N. L. R. B.* 327 F.2d 351, 354-355 (9th Cir. 1964).

Thus, the crucial questions in this case are to determine if Respondent 1) has induced other unions to stop deliveries or services or 2) if its message is truthful. If it has not induced the stoppage of deliveries, then Respondent's message to the public may be lawful as long as it is truthful and regardless of whether Respondent's objective is for long term recognitional or organizational goals. Conversely, if its object is to induce stoppage of deliveries and services, or the message is untruthful, then it may be unlawful. *Id.*

B. The Merits of Petitioner's Claim for § 10(l) Relief

Respondent maintains that its informational picketing is fully protected by the First Amendment, so that any injunction requiring union members to take down their signs, stop distributing pamphlets, or modify their signs, pamphlets or slogans would be unconstitutional. If this contention is colorable-and the Court concludes that it is-then the deference this Court owes to the Board with regard to the interpretation of the NLRA is negated. *Overstreet v. United Broth. of Carpenters and Joiners of America, Local Union No. 1506* 409 F.3d at 1206. Petitioner's evidence admits that Respondent has not prevented employees from crossing the picket line and working, and all deliveries have

6

**[PROPOSED] ORDER DENYING PETITION FOR TEMPORARY INJUNCTION**

been made. Petitioner has made no showing that Respondent has engaged in untruthful speech. Petitioner's concern is that Respondent will not modify the content of its speech according to the will of Petitioner. Due to the First Amendment backdrop, as created by the facts in this case, and out of necessity for constitutional caution, the Court will consider in detail why Norelli has little likelihood of succeeding in showing that § 8(b)(7)(C) prohibits the Respondent's picketing activity.

This Court's need to avoid creating a "significant risk" to the First Amendment affects both how the Court will proceed to interpret the statute at issue and the degree to which the Court will take into account Norelli's view of the statute. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). This Court finds that § 8(b)(7)(C) has been interpreted by the NLRB and the Ninth Circuit and therefore will follow the interpretation of the Ninth Circuit in *Smitley v. N. L. R. B.* 327 F.2d 351, 354-355 ("We think that, in substance, the effect of the second proviso to subparagraph (C) is to allow recognitional or organizational picketing to continue if it meets two important restrictions: (1) it must be addressed to the public and be truthful and (2) it must not induce other unions to stop deliveries or services.).

Petitioner's evidence concedes that Respondent's picketing has not induced other unions to stop deliveries or services. Pet'n Ex. p. 14. However, Petitioner contends that Respondent's slogans, pamphlets and picket signs depicting GGU as "UNFAIR" is deceptive because it suggests to the public that the NLRB has found GGU to have engaged in an Unfair Labor Practice. Petitioner does not take into account that its

7

evidence shows that GGU and Respondent have been engaged in counter pamphleting to rebut each other's propaganda. Pet'n. Ex. A, ECF Doc. 17. GGU disagreed with the Respondent about whether GGU's 10 employees were non-union. In other words, GGU and Respondent were engaged in a dispute about the "UNFAIR" issue.

The Court concludes that Respondent's slogans, pamphlets, and picket signs did not contain false assertions and, therefore, were truthful. The Court finds that against the backdrop of the First Amendment as analyzed in *Overstreet* and applying the *Miller* "just and proper" test, Norelli did not establish a fair chance of success on the merits. Norelli's legal theory is weak, given the non-coercive and truthful nature of Respondent's picketing activity. In light of the First Amendment concerns present in this case, the Court finds that Norelli did not show a fair chance of proving that Respondent's picketing is outside the scope of the second proviso of § 8(b)(7)(C) as interpreted by *Smitley*. The Court has examined the pictures of the picketing site and the pamphlet submitted as exhibits to the petition and the reply. There is no evidence that the union members harassed or stopped people from entering the university or prevented deliveries. The Court finds that the union's activity at GGU is not traditional picketing within the meaning of the NLRA. Petitioner has not made a prima facie showing of a § 8(b)(7)(C) violation.

Under the Ninth Circuit's preliminary injunction precedents, a moving party must show either "a combination of probable success on the merits and the possibility of irreparable harm" or "serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." *Miller,* 19 F.3d at 456 (citing *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 977 (9th Cir.1992)).

[PROPOSED] ORDER DENYING PETITION FOR TEMPORARY INJUNCTION

Because Petitioner has not met the first element of the *Miller* injunction requirements, the Court will not presume irreparable injury. 19 F.3d at 460. The Court finds that there is no serious question going to the merits based on the facts before the Court. The Court finds that Petitioner does not have a fair chance of success on the merits given the First Amendment backdrop of this case. Lastly, in balancing the hardships, the Court takes into account the probability that declining to issue the injunction will not result in an allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority because Respondent's picketing activity, against the backdrop of the First Amendment, is within the confines of *Smitley* and *Overstreet.*

## Conclusion and Order

For the foregoing reasons, the Court DENIES Petitioner's motion for an injunction pursuant to 29 U.S.C. § 160(l).

IT IS SO ORDERED.

DATED: _____                    _____
                                     HON. MARTIN J. JENKINS
                                     United States District Court Judge

[PROPOSED] ORDER DENYING PETITION FOR TEMPORARY INJUNCTION